In re Incorporation of Village of Oconomowoc Lake:
Gotfredson and others, Respondents, vs. Town of
Summit, Appellant.

*September 12—October 11, 1955.*

For the appellant there were briefs and oral argument by *John C. Love* of Waukesha.

For the respondents there was a brief by *Fairchild, Foley & Sammond, Steven E. Keane, Lynford Lardner, Jr.,* and *Edwin P. Wiley,* all of Milwaukee, and oral argument by *Mr. Keane.*

FAIRCHILD, C. J.   We have only the question of the sufficiency of the petition to deal with. The court should not refuse to hold that the facts on which the purpose of the petition is based be fully presented so as to advise the objecting party of the essential elements claimed to exist and of the issues which must be met with relation to the existence or nonexistence of those essential elements. The preliminary proceedings, such as preparation of maps, survey, notice, and filing of petition were properly alleged and are not seriously challenged here. The sufficiency of the petition seeking the incorporation as a village of the area involved is challenged because respondents have failed to bring to the court by allegation a claim that such area exists presently as a village or to allege such characteristics as would show that it is a village. Having alleged compliance with the two elements of a village prescribed by statute, *i. e.,* area and population, respondents contend that they do not have to allege, in addition, that the area they seek to incorporate is a village in fact, or to allege characteristics of a village.

The incorporation of a village can occur only when the affected territory and population constitute a village in fact, as distinguished from an area which has not developed its conveniences and social and domestic life to village purposes. *State ex rel. Holland v. Lammers,* 113 Wis. 398, 86 N. W. 677, 89 N. W. 501. The legislature can grant recognition to and confer village status and authority upon a community which is a village in fact.

Sec. 3, art. XI, and sec. 23, art. IV of the constitution originally directed, respectively, that:

"It shall be the duty of the legislature, and they are hereby empowered, to provide for the organization of cities and incorporated villages," and that—

"The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable."

The first statute enacted in accordance with those constitutional mandates was ch. 52, sec. 1, R. S. 1849. Since 1849 that statute has been amended and renumbered at various times until it now appears as sec. 61.01, Stats. It presently reads:

"61.01 INCORPORATION: AREA AND POPULATION. Any part of any town or towns not included in any village, lying in the same county or in two or more adjoining counties, not more than one half square mile in area, with a resident population of not less than 150; or of a greater area than one half square mile and a population of not less than 200; or not less than one square mile in area, with a population of at least 400 persons to every square mile thereof, may, upon application therefor by not less than five taxpayers and residents of such territory and upon compliance with the conditions of this chapter, become incorporated as a village by such name as may be designated in the order of the court for its incorporation with the ordinary powers of a municipal corporation, and such as are conferred by the statutes, except that no territory used principally for tourist or summer resort purposes, shall be so incorporated where one half or more thereof, in area, is owned by persons who are not qualified, because of nonresidence, to vote in the state or in the township in which is located the land so owned; unless the majority of the nonresident owners, by petition, consent to the incorporation thereof."

In 1901, the constitutionality of sec. 854, Stats. 1898 (corresponding to the present sec. 61.01, Stats.), was at-

tacked for the first time in *State ex rel. Holland v. Lammers, supra.* In that case, there was an attempt to incorporate a portion of a town of about two square miles, situated entirely within one county and having a resident population of 317. The statute (sec. 854, Stats. 1898) then provided that any part of any town or towns, not less than one-half square mile in area and not included in any village and all lying in the same county, which contained a resident population of not less than 300 might, on compliance with ch. 40, Stats. 1898, become incorporated as a village. The problem arising in that case was whether certain distinctly rural, sparsely settled, agricultural lands were entitled to be included, under the statute and the constitution, in the territory sought to be incorporated as a village. The constitutionality of the general law was attacked on the grounds that it did not limit the size of the territory to be incorporated by prescribing a restriction as to density of population in proportion to area. The court there determined that such a restriction was to be implied from the use in the constitution of the words "cities and incorporated villages," and held as its final conclusion that (p. 415) :

"*With the implied limitations* we have mentioned surrounding each attempt to incorporate villages under the general law, it may be upheld as a valid enactment, and impervious to the attack upon it that it violates the constitutional rule of uniformity of town government."

In reaching this conclusion, the court reasoned that many of the framers of our constitution came from New England and New York, and that when they framed our constitution they used the word "village" in the sense of a village as it existed in the older parts of the country at that time, that is, in the sense of an urban, developed community. Upon this basis, the court determined that a territory proposing to incorporate as a village must be a village in fact. It was stated in the opinion that (p. 414) :

"When the law says that any district containing a population of 1,500 or over may become incorporated as a city, it means that any district having the ordinary and usual characteristics of a city may thus become incorporated. . . . The same limitations must be held to apply to the incorporation of villages. . . . Under the law in question the territory seeking incorporation as a village must be harmonious with the idea of what a village actually is."

Respondents argue, in effect, that the 1939 amendment of the statute, which gives us our present law, destroyed the "village characteristics" test applied in the *Lammers Case*. They urge that there it was necessary for the court to use that test of village-characteristics requirements in order to supply by implication the lack in the general law resulting from the failure of the legislature to indicate a ratio of density of population to area. The assumption is that the population-to-area ratio having since been expressed by legislative will, there are no further constitutional limitations to be implied. However, area and population are not the only attributes of a village. The opinion in the *Lammers Case,* among other things, states that a village must have a "reasonably compact center or nucleus of population," and its territory must be "distinctly urban in character, with such adjacent lands as are. naturally connected with, and are reasonably appurtenant and necessary for future growth, in view of the surroundings and circumstances of location and prospects of future prosperity." Confining ourselves to these descriptions alone, does the statute, as now amended, determine whether a territory is distinctly urban in character, and. whether the adjacent lands are naturally connected with it and reasonably appurtenant and necessary for future growth? Does it determine the surroundings and circumstances of location and prospects of future prosperity? The answer clearly must be in the negative, for the broad aspects contained in the foregoing recognized and time-honored definitions of a village cannot be circumscribed within the narrow confines of a statute

which does no more than set up minimum standards for villages by prescribing a modicum of inhabitants per square mile.

The implied constitutional requirement is basic and cannot be read out of the statute, but must be considered as underlying the legislative enactment. A loosely composed structure made up of given areas lumped together merely because they contain given populations does not satisfy the constitutional concept of a village. If an area is not a village, as conceived by the framers of the constitution, then area and density of population *per se* do not make it so, and it cannot be incorporated as a village. The verb "to incorporate" in itself implies a blending into a consistent, harmonious whole. A village is a political, sociological, and geographic unit.

Respondents urge further that "the functions of the court are exclusively judicial and ministerial—*i. e.,* ascertaining compliance with the specified procedural steps and area-population requirements and setting in motion the machinery for the incorporation election," and cites the case of *In re Incorporation of Village of North Milwaukee,* 93 Wis. 616, 67 N. W. 1033. In *Fenton v. Ryan,* 140 Wis. 353, 359, 122 N. W. 756, it was stated that: "The statement in the *North Milwaukee Case* that a court could not determine whether lands embraced in a petition for incorporation should justly be included in the proposed village was made in reference to a subject not directly before the court for determination and can hardly be considered a part of the decision of the court. Besides, the constitutional question raised and decided in *State ex rel. Holland v. Lammers* was not raised, passed upon, or considered in the *North Milwaukee Case.*" Even where the statutory requirements, including area and population, have been complied with, it is nevertheless the duty of the courts to determine in each case whether the territory seeking to be incorporated as a village is a village in fact. As pointed out by appellant, "Any other rule will open the door

to all sorts of gerrymandering and manipulations for objectives apart from the fundamental purpose of incorporation which is to give the advantages of village government to an existing community which is a village in fact."

That the courts have continued to consider village-characteristics requirements in addition to the statutory requirements is evident from the opinion in *In re Incorporation of Village of St. Francis,* 209 Wis. 645, 245 N. W. 840. There the court considered such matters as adequate means of communication between the parts of the proposed village, existence of an obstruction such as a railroad right of way, and the absence of highways. Furthermore, the court took up the matter of whether the area proposed to be incorporated would fit more harmoniously with the existing scheme of government as a part of the old community or political unit and how it would function as a separate and distinct unit. Other cases which may be referred to are: *In re Town of Hallie,* 253 Wis. 35, 33 N. W. (2d) 185; *Incorporation of Village of Biron,* 146 Wis. 444, 131 N. W. 829, and *In re Village of Elm Grove,* 267 Wis. 157, 64 N. W. (2d) 874. In the case of *In re Village of Elm Grove, supra,* decided after the 1939 amendment to sec. 61.01, Stats., the lower court was reversed for error in excluding evidence on village characteristics, and the case was sent back for retrial.

The question of village characteristics was not reached in *In re Village of Oconomowoc Lake,* 264 Wis. 540, 59 N. W. (2d) 662, because the petition in that case did not comply with the statutory requirements as to area and population and did not conform to the rule of contiguity.

We do not on this appeal determine whether the territory involved is a village. We hold merely that any area sought to be incorporated as a village must be a village in fact; and that respondents' pleadings are deficient because they fail allegations that the area sought to be incorporated is a village in fact or allegations of such facts as would show the existence

of a village. The appellant town of Summit has an adverse interest and has the right to demur. The order appealed from should be reversed with directions that the demurrer be sustained. The petitioners have leave to amend their petition within thirty days from the time of the remittitur.

*By the Court.*—The order overruling the demurrer is reversed. Cause remanded for further proceedings according to law.

CURRIE, J. (*dissenting*). The majority opinion places the court's stamp of approval upon the procedure followed here by the appellant town in demurring to the petition for incorporation. The result is that an order overruling such a demurrer constitutes an appealable order under the provisions of sub. (3), sec. 274.33, Stats.

This issue was not before us on the prior appeal of *In re Village of Oconomowoc Lake* (1953), 264 Wis. 540, 59 N. W. (2d) 662, because, while the town of Summit therein attacked the sufficiency of the petition by an instrument entitled "Demurrer and Motion to Dismiss," the order of the trial court did dismiss the petition as insufficient. Such an order was an appealable order under the provisions of sub. (1), sec. 274.33, Stats., as its effect was to terminate the action, which an order holding the allegations of the petition to be sufficient would not.

Sec. 263.06, Stats., authorizes demurrers to be interposed to "complaints" and sec. 263.01 makes it clear that ch. 263, Stats., relates to the forms of pleadings in "civil actions." Proceedings to incorporate a village are special statutory proceedings and not civil actions. However, sec. 260.01 provides:

"Title XXV relates to civil actions in the circuit courts and other courts of record, having concurrent jurisdiction therewith to a greater or less extent, in civil actions, and to special proceedings in such courts *except where its provisions*

*are clearly inapplicable or inappropriate to special proceedings."* (Italics supplied.)

Demurrers are "clearly inapplicable and inappropriate" to village incorporation proceedings. Secs. 61.01 to 61.08, Stats., govern such proceedings and do not require that the petition be served on anyone but merely that it be filed with the court. Sub. (1) of sec. 61.07 confers upon a majority of the freeholders residing in the territory sought to be incorporated, or the owners of more than one half of the property by assessed value in such territory, the right to file a petition subscribed by them in opposition to the incorporation. If such opposition petition is filed the court is required to deny the petition for incorporation. Sub. (2) of sec. 61.07 provides that if such an opposition petition is not filed "the court shall hear all parties interested for or against such application who shall seasonably appear."

This prescribed procedure is in marked contrast to such a special statutory proceedings as condemnation where the property owner whose land is sought to be taken by a municipal corporation is expressly given the right to serve and file an answer (sub. (1) of sec. 32.07, Stats.) and where the proceeding is adversary in character. The instant village incorporation proceedings are nonadversary in character because directed against no one, and the town out of whose territory the village is sought to be incorporated merely has the right to appear and affirmatively object if the statutory procedure for incorporation is not complied with. The village incorporation statutes do not contemplate that the town or anyone else shall file an answer or demurrer to the petition.

By holding that such a petition is not demurrable, an objecting property owner or town would in nowise be prejudiced because the sufficiency of the petition can always be reviewed on appeal from the order granting the incorporation. On the other hand, by according the right of demurrer to an object-

ing town, a temptation is provided to use it, together with the concomitant right of appeal from an order overruling the demurrer, for purposes of delay so as to gain at least one year more of taxes from the territory sought to be incorporated.

The proper disposition to make of this appeal would be to hold that the objecting town had no right to demur to the petition, and, therefore, the order overruling such so-called demurrer is not an appealable order.

Turning now to the merits, I must respectfully dissent from the conclusion of the majority that the petition was insufficient. It must not be lost sight of that this incorporation proceeding is purely statutory in character. The petition contains every allegation required by the express wording of secs. 61.01 to 61.06, Stats. If this court by implication reads into such statutes the requirement that the described territory must have the characteristics of a village, then in construing the instant petition, which contains all the allegations expressly required by the statutes and requests that such territory be incorporated *"as a village,"* the same reasonable inference should be drawn therefrom that it does allege that such territory does possess the characteristics of a village.

I am authorized to state that Mr. Justice MARTIN and Mr. Justice STEINLE concur in this dissent.